OPINION ON PLAINTIFF EBIX.COM, INC.’S MOTION TO DISQUALIFY THE LAW FIRM OF CUMSKY AND LEVIN AS COUNSEL FOR THE
 
 
 *CXXVII
 

 MCCRACKEN DEFENDANTS (# 67)
 

 [1]
 

 COLLINGS, United States Magistrate Judge.
 

 I. INTRODUCTION
 

 Plaintiff and Delaware-based software licensing corporation ebix.com, Inc. (“ebix”) is suing defendants Frank McCracken Jr., Nick DiMarco, Paula Dun-mire, Joanne Stanton, Gayle Griffith, McCracken Insurance Solutions, LLP (“MIS”), and McCracken Financial Software, Inc. (“MFS”)
 
 [2]
 
 , alleging illegal misappropriation of confidential information and customers from ebix. Specifically, ebix seeks injunctive relief and damages arising from the defendants’ alleged breach of confidentiality agreements and other contracts, breach of employment contracts, the federal Copyright Act, breach of the Illinois and Massachusetts trade secrets acts, commercial disparagement of ebix’s business and intangibles, chapter 93A, and tortious interference with contractual relations. (See Plaintiffs Second Amended Complaint # 14) ebix alleges that the defendants’ misappropriation of its client and customer fist, software, trade secrets, and other business intangibles, and the formation of a new corporation that competes directly with its preexisting business breached the confidentiality and trade secret agreements that each defendant signed.
 

 While this suit was originally filed in the Northern District of Illinois, on December 20, 2001 that court transferred this case to Massachusetts after allowing discovery on the jurisdictional issue raised by the defendants’ motion to transfer. (See Certified Copy of Transfer Order # 1) Immediately before the Court is ebix’s motion to disqualify Richard Levin and Seth Salinger, the two attorneys representing most of the defendants, as well as their law firm, Cum-sky
 
 &
 
 Levin, LLP.
 
 [3]
 
 (# 67) Levin and Salinger (referred to herein as the “attorneys”) represent defendants Frank McCracken, Nick DiMarco, Paula Dun-mire, Joanne Stanton, Gayle Griffith, and MIS (collectively, the “McCracken defendants”). ebix maintains that the attorneys’ continued representation of the McCracken defendants runs afoul of the Massachusetts Rules of Professional Conduct because they previously represented ebix’s corporate predecessors in substantially related matters.
 

 In response to ebix’s motion to disqualify, the McCracken defendants filed an Opposition of the McCracken Defendants to Ebix.eom’s Motion to Disqualify the Law Firm of Cumsky & Levin LLP as Counsel
 
 *CXXVIII
 
 for the McCracken Defendants (#78), a Supporting Memorandum (with exhibits)(# 73) and the affidavits of Seth H. Salinger, Esq. (#74), Richard J. Levin (# 76) and Frank H. McCracken, Jr. (# 75). ebix then filed a Reply Memorandum of Law in Further Support of Its Motion to Disqualify the Law Firm of Cumsky
 
 &
 
 Levin LLP as Counsel for the McCracken Defendants (with exhibits) (# 85). A hearing on the instant motion was held on October 24, 2003; after the hearing ebix filed a letter to supplement its previously filed pleadings (# 91), and the McCracken defendants filed a responsive letter (# 92) and a Supplemental Affidavit of Seth H. Salinger, Esq. (# 93)
 

 With the issue having been fully briefed by the parties and a hearing having been held, the plaintiffs motion is now in a posture for resolution. For the reasons discussed below, the plaintiffs motion was denied by electronic order on March 31, 2004.
 
 [4]
 

 II. RELEVANT FACTS
 

 A. Factual Background and Advent of this Lawsuit
 

 ebix’s immediate corporate predecessor, Delphi Information Systems (“Delphi”), was formed in 1976. (# 68, p. 3) On or about January 31, 1991, Delphi merged with McCracken Computer, Inc. (“MCI”), an entity formed and run by Frank McCracken, Jr. (“McCracken”)
 
 (Id.)
 
 As part of the merger, Delphi acquired all rights in Insight, a copyrighted software program, created by McCracken.
 
 (Id.
 
 at 4) McCracken, who did not remain with the merged entity (called Delphi/McCracken, then Delphi/ebix) signed a non-compete agreement with Delphi; ebix represents that a ten-year clause applies to several conditions of that agreement.
 
 (Id.)
 
 Levin and Salinger, who were associated at the time of the merger with the law firm of Looney & Grossman, represented MCI and McCracken on a number of matters over the years.
 
 (Id.
 
 at 3-4)
 

 ebix filed this lawsuit after the formation
 
 of
 
 MIS in 2001, shortly after the expiration of (at least part of) the McCracken non-compete agreement, ebix maintains that McCracken formed MIS “for the specific purpose of providing maintenance and support to users of ebix’s Insight software.” (# 68, pp. 4-5) McCracken also allegedly “orchestrated the departure of all of the ebix employees responsible for supporting Insight,” employees who are also defendants in this action; obtained confidential information from those former employee-defendants; and “solicited business from ebix’s Insight customers.”
 
 (Id.)
 
 According to ebix, these actions violate or breach (1) the McCracken non-compete agreement; (2) the confidentiality agreements between the former employees and ebix; (3) the Massachusetts and Illinois Trade Secret Acts; (4) Massachusetts General Laws chapter 93A; (5) the federal Copyright Act; (6) the implied covenant of good faith and fair dealing; and (7) tortious interference with contractual relations. (See generally # 14) ebix alleges that at least sixteen companies have cancelled their contracts for Insight-related services and now receive that support from MIS and the former ebix employees. (# 68, p. 5)
 

 B. The Pre-Motion Discussions of a Potential Conflict
 

 While ebix maintains that it first addressed the conflict of interest issue in
 
 *CXXIX
 
 July of 2003, Levin and Salinger maintain that ebix should have known about Levin’s prior representation of MCI much earlier. (# 73, p. 2) First, in an October 4, 2001 deposition conducted in association with the motion to transfer venue in the Northern District of Illinois, McCracken noted that Levin had been his attorney “for a very long time,” and Levin told ebix’s Illinois counsel in off-the-record discussions that he had represented McCracken and MCI for several years and was familiar with insurance industry software. (# 73 at 6) Second, in the May 6, 2002 scheduling conference before this court, Levin disclosed that he had represented MCI for several years.
 
 {Id.
 
 at 7)
 

 On July 18, 2002, ebix sent Levin a letter addressing its concerns over Levin and Salinger’s former representation of MCI, Delphi, and Delphi/ebix. (# 68, p. 5) The letter indicated that the conflict came to ebix’s attention when reviewing files and corporate documents connected with the case, and stated:
 

 In order for us to more meaningfully evaluate whether there is a conflict that could require your withdrawal as counsel in this matter, we would like to understand your view as to why your current representation of these individuals and entities in the above-referenced action does or does not violate Rule 1.9 or any other rule of professional conduct or ethical canon. To that end, we request that you provide us in writing details regarding the scope, nature, extent and duration of the representation you and Mr. Salinger provided to Delphi/ebix from 1991 to present.
 

 (# 68, pp. 5-6)
 

 Levin responded with a letter of his own on July 25, 2002, maintaining “[i]t has been no secret since the outset of this case that the undersigned represented [MCI]” before the merger ...” (#68, p. 6) He further stated:
 

 Neither Seth [Salinger] nor I have any recollection of Seth representing MCI prior to the sale nor representing [Delphi] or Ebix subsequent to the sale. Further, I have no recollection or record of providing any legal services to Ebix/Delphi after the sale. To the extent there was any incidental service to Ebix/Delphi after January 31, 2001 [sic, should read 01/31/91], it was of a de minimis nature, and certainly not related in any way to the issues in the present case. To the extent you have information, other than speculation, that either Seth or I represented Ebix/Delphi from January 1991 to the present, please provide me with details and we will be happy to review.
 

 (# 68, p. 6)
 

 As counsel for ebix did not respond to this letter, Levin and Salinger represent that they “assumed that Mintz Levin had examined the issue and had determined that no conflict of interest existed.” (# 73, p. 10)
 

 ebix maintains that this issue next arose in January of 2003, when the parties held a Rule 37 discovery conference. (# 68, p. 6) ebix represents that Levin made statements during that conference suggesting he had not only obtained relevant information during his earlier representations, but that he was using such information in his current representation of the McCracken defendants. (# 68, p. 6) Specifically, ebix alleges that Levin stated that ebix’s 1991 market share for insurance agency management software — 80%—had declined during the 1990s as ebix expanded its applications and product lines, and that ebix once had over 100 Insight customers but had 30 at the time it filed its Second Amended Complaint. (# 68, p. 6) When asked, Levin told ebix’s counsel he knew
 
 *CXXX
 
 this information because he had “represented McCracken for years.”
 
 (Id.
 
 at 7) However, Levin has responded that he did not know this based on his prior representation of Delphi/McCracken; the last time he represented Delphi/McCracken in any capacity was in 1995, and customers began leaving in significant numbers in 1998. (#73, p. 13) Levin represents that his “limited role with Delphi ended altogether in 1995,” and “[a]fter he authored his last auditor’s letter for Delphi’s accountants, Levin did not have even tangential contacts with the company.”
 
 (Id.)
 

 On January 17, 2003, ebix sent another letter to Levin, reiterating its concern with the prior representation and demanding that Levin and Salinger immediately produce all ebix client files. (# 68, p. 7) ebix made the same request of Levin and Salinger’s former law firm, Looney
 
 &
 
 Gross-man.
 
 (Id.)
 
 On January 29, 2003, Levin sent ebix a letter stating he had undergone a “review of all files under [his] custody for which services were, at one time, provided to Delphi/McCracken”; such review now indicated that Levin had represented ebix on at least eight different matters. (# 68, p. 7) ebix states that it had assumed Levin had already made such a review, based on its request (and Levin’s response) in July of
 
 2002.(Id.)
 
 In this letter, Levin identified eight prior matters, one before the merger and the other seven after the merger, in which it represented Delphi/McCracken, ebix then made “numerous requests” to view the ebix client files; on February 7, 2003, Levin and Salinger forwarded four boxes, and then reviewed eight boxes at the Looney offices. (# 68, pp. 7-8) On May 2, 2003, Levin and Salinger forwarded four additional boxes to ebix.
 
 (Id.
 
 at 8)
 

 III. ANALYSIS
 

 The grounds of this motion lie in Levin and Salinger’s prior representations of MCI and Delphi/McCracken. Under Rule 1.9 of the Massachusetts Rules of Professional Conduct (“Rule 1.9”), an attorney may not represent a client in a matter that is both adverse
 
 [5]
 
 and “substantially related” to a matter in which he represented a former client, ebix maintains that Levin and Salinger represented ebix’s corporate predecessors in matters pertaining to the McCracken non-compete agreement, the confidentiality agreements, copyright and trademark registrations of Insight, and general employment-related matters and that those matters are substantially related to this litigation. The McCracken defendants respond that this motion is tactical and untimely, maintaining that the attorneys’ prior representations are not related to the issues in this suit. They argue further that ebix has filed this motion only to continue to stall the progress of discovery.
 
 [6]
 

 A. The Massachusetts Rules of Professional Conduct
 

 Decision on the instant motion is controlled by Rule 1.9. The District of Massachusetts has adopted the Massachusetts Rules of Professional Conduct, per Local
 
 *CXXXI
 
 Rule 83.6(4)(B) (Incorporating by reference “those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court, ...”). Rule 1.9 states, in pertinent part, that:
 

 (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation.
 

 See
 
 National Med. Care v. Home Med. of America, Inc.,
 
 No. 00-1225, 2002 WL 31068413, *8 (Mass.Super. Sept. 12, 2002) (“[T]he spirit of Rule 1.9 is that a law firm retains a limited duty of loyalty to a former client — it may not use a former client’s confidential information against that client, and should not represent a new client in any matter where the former client reasonably should fear that its earlier confidences will be misused.”).
 

 In
 
 Adoption of Erica,
 
 426 Mass. 55, 686 N.E.2d 967 (1997), the SJC articulated the test for determining when an impermissible conflict exists between a former and current client: (1) “the current representation must be ‘adverse’ to the interests of the former client”; and (2) “the matters of the two representations must be ‘substantially related.’” 426 Mass. at 61, 686 N.E.2d at 971 (citations omitted)
 
 [7]
 
 . “Where the primary purpose of the ‘substantially related’ test is to preserve client confidences by avoiding an ‘intolerably strong temptation’ to betray them, the assessment of whether matters are ‘substantially related’ must focus on whether the overlap or similarity between the two matters would potentially give rise to such a ‘temptation.’ ”
 
 Dee v. Conference Holdings, Inc.,
 
 No. 976608, 1998 WL 1247926, *2 (Mass.Super. July 14, 1998). This turns on whether it is “reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter.”
 
 Id.
 
 See also
 
 Rodriguez v. Montalvo,
 
 No. 02-CV-40139-NMG (D.Mass., Jan. 12, 2004)(unpublished opinion), at p. 13 (“The substantial relationship between the subject matters [in the two cases] (indeed their identity) raises the specter that information gleaned from [plaintiffs] communications with [defense counsel’s former employee] could be used against [plaintiff] by her adversary” in the instant action.).
 

 Relying on these two articulated factors, the Adoption of Erica court vacated the lower court’s disqualification of the adoptee’s attorney. 426 Mass. at 64, 686 N.E.2d at 974. The adoptee’s attorney had formerly represented the adoptee’s grandfather (before the adoptee was born), but nothing in the evidentiary record suggested that the former representation was adverse to the adoptee’s interests or had any relationship to the adoption proceeding. 426 Mass. at 61, 686 N.E.2d at 971-72. Finding no evidence that the attorney had used confidential information obtained from the grandfather in the subsequent adoption proceeding, the court noted “[w]e encourage deference to an attorney’s best judgment as to whether her representation of a client brings her into conflict with any provisions of the disciplinary code.”
 
 Id.
 
 at 973 (citations omitted). A finding of actual use of confidential information is unnecessary if the substantial relationship test is met; under that test, the court will assume an attorney will use confidences obtained
 
 *CXXXII
 
 from the former client in the subsequent representation. See
 
 Bays v. Theran,
 
 418 Mass. 685, 691, 639 N.E.2d 720, 724 (1994)(“[T]he 'substantial relationship' test operates by assuming that confidences were transmitted in the former attorney-client relationship.”).
 
 [8]
 

 B. Who Has The Burden of Proving or Disproving a Conflict?
 

 Here, each party attempts to cast the burden of proving—or disproving—a conflict on their opponent. In most contexts, the movant bears the burden of proving a conflict. See
 
 In re Georgette,
 
 439 Mass. 28, 35, 785 N.E.2d 356, 362 (2003) (Discussing Massachusetts Rules of Professional Conduct and citing criminal case of
 
 Commonwealth v. Soffen,
 
 377 Mass. 433, 386 N.E.2d 1030, 1034 (1979) for rule that the “burden lies with person alleging conflict to prove its existence and precise character”);
 
 City of Springfield v. Rexnord Corp., 111
 
 F.Supp.2d 71, 73 (D.Mass.2000) (Regarding a motion to disqualify an expert, the court stated, “[a]n objecting party has the burden of proving that there exists a conflict of interest warranting disqualification.”)
 

 ebix points the court to Comment 15 to Rule 1.7 of the Massachusetts Rules of Professional Conduct, which states “[rjesolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation.” Further, “in cases of doubt, counsel must resolve all questions against the acceptance of employment whenever such acceptance may impinge upon the interests of his present and former clients.”
 
 Mailer v. Mailer,
 
 390 Mass. 371, 455 N.E.2d 1211, 1213 (1983) (affirming denial of motion to disqualify attorney who represented husband in divorce proceeding after wife had consulted him about divorcing husband several years earlier, when in course of consultation wife revealed publicly available information about her husband and lapse of five years was relevant factor). Nonetheless, it still seems that, under the substantial relationship test (which Rule 1.9 incorporates), the burden lies with the former client:
 

 Under the “substantial relationship” test, a subsequent representation is proscribed “on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client.” The [former] client need never prove that the attorney actually misused the confidences to the client’s disadvantage. Instead he must prove only the existence of the tempting situation by showing (1) that an attorney-client relationship existed in the former legal representation, and (2) that the former and current representations are both adverse and substantially related.
 

 Bays,
 
 418 Mass. at 690, 639 N.E.2d at 723 (quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1318 (1981))(emphasis in original). Thus, it ap
 
 *CXXXIII
 
 pears that ebix bears the burden of satisfying the substantial relationship test.
 
 [9]
 

 C. The Suspicion Associated with Motions to Disqualify
 

 The SJC has emphasized that “ ‘[disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.’ ”
 
 Adoption of Erica,
 
 426 Mass. at 58, 686 N.E.2d at 970 (quoting
 
 Freeman v. Chicago Musical Instrument Co.,
 
 689 F.2d 715, 721 (7th Cir.1982)). That court has also warned of the misuse of such motions by parties seeking to harass their opposition. See
 
 Adoption of Erica,
 
 426 Mass. at 64, 686 N.E.2d at 974 (“We have noted our concern about the high cost to litigants and to the court system occasioned by motions to disqualify attorneys, especially when such motions are used as harassment and dilatory tactics.”).
 

 D. The Matters Asserted to be Substantially Related
 

 As mentioned above, there are several discrete matters on which Levin and Salinger represented ebix’s predecessors that ebix asserts are substantially related to the claims in this lawsuit. If any one of these matters is substantially related to claims in this litigation, that would be a basis for disqualification of Levin and Salinger and their firm. That is, if ebix can establish that Levin and Salinger represented ebix or its predecessors on even one matter that is substantially related to a matter on which they are now representing the McCracken defendants, then Levin and Salinger would be in violation of Rule 1.9 and disqualification would be appropriate.
 

 1. The Merger/Non-Compete Agreement Representation
 

 First, ebix asserts that McCracken’s alleged breach of the non-compete agreement comprises a primary focus of this litigation. In short, ebix claims that McCracken violated his non-compete agreement by “(i) forming the McCracken Entities for the specific purpose of competing with and being a competitor of Plaintiff; (ii) soliciting DiMarco, Dunmire, Stanton, and Griffith to become employees...; and (iii) directing DiMarco, Dunmire, Stanton and Griffith to solicit the Plaintiffs Insight System customers.... ” (# 14, ¶ 65) An invoice sent to Delphi/McCracken for services rendered in January of 1991 contains two references to legal work purportedly done by Levin and Salinger on that non-compete agreement.
 

 01/29/91 Legal research regarding covenants not to compete and validity of McCracken Employment Agreements for Opinion Letter
 

 01/30/91 Legal research regarding covenant not to compete for opinion letter; Draft of opinion letter
 

 (# 68, p. 9) ebix also points to a fax from Levin on January 31, 1991 (the date of the merger) entitled “Plan of Reorganization and Merger Among Delphi Information Systems, Inc., McCracken Acquisition Corporation, McCracken Computer, Inc. and the Stockholders of McCracken Computer, Inc.” (# 68, p. 9) That Plan of Reorganization purportedly referenced the “non-competition Agreement with Frank H. McCracken.” (# 68, p. 9)
 

 Moreover, according to ebix, if Levin and Salinger are allowed to continue to represent the McCracken defendants, they will on behalf “of their current clients to the detriment of ebix-... challenge the enforceability of the McCracken Non-Com
 
 *CXXXIV
 
 petition Agreement, an agreement that they previously advised ebix was enforceable.” (# 91, p. 2) ebix further asserts that Levin and Salinger’s actions here represent “an attempt on behalf of a current client to undo what has been done previously on behalf of a former client.”
 
 (Id.)
 
 (emphasis in original).
 

 Not surprisingly, Levin and Salinger deny the substantiality and relevance of the advice they provided on this matter. They state that during the merger Delphi was represented by Testa, Hurwitz & Thi-beault, and Jones, Day (Los Angeles); MCI was represented by the New York office of Graubard, Mollen, Horowitz, Pom-eranz and Shapiro (“Graubard”). (# 73, p. 21) The attorneys represent that Graubard “needed Massachusetts counsel to opine on the enforceability of Massachusetts contracts so that it could advise MCI to enter into the merger agreement,” and the opinion addressed to Graubard “was a standard format that merely advised New York counsel that MCI’s execution of the documents in connection with the Stock Purchase did not violate Massachusetts law.” (# 73, p. 1)
 

 Further, Levin and Salinger take issue with ebix’s portrayal of the facts surrounding the non-compete agreement. Specifically, Levin and Salinger assert that the Opinion of Counsel (the “Opinion”) referenced by ebix “did not pertain in any way to Frank McCracken’s individual covenant not to compete. The covenant not to compete which is the subject of one of the plaintiffs causes of action was not between MCI and Delphi/ebix; rather, it was between Frank McCracken, individually, and Delphi/ebix.” (# 92, p. l)(emphasis in original). In sum, say the attorneys, they “rendered no advice to Delphi/ebix [during the merger] and did not otherwise represent it with respect to Frank McCracken’s covenant not to compete... .Accordingly, as Levin and Salinger never represented ebix in connection with the covenant not to compete, they cannot be disqualified on the grounds that ebix mistakenly thinks that they did.”
 
 (Id.)
 

 Obviously, the factual circumstances surrounding the covenant not to compete which is the subject of this lawsuit and the research done by Salinger for McCracken individually regarding covenants not to compete are confusing and hard to sort out, especially viewed in hindsight. However, from all that appears, there was in place a non-competition agreement between Delphi/ebix and McCracken individually, the purported violations of which comprise part of the instant lawsuit. Notably, Levin and Salinger did not draft McCracken’s non-compete or any of the non-compete agreements at issue in this case or offer any opinion on the enforceability of those non-competes. (See, e.g., # 73, p. 23, # 76, ¶ 20). However, Salinger testified that he apparently did do research regarding non-competes in general for McCracken individually, but not for ebix. (See # 93, ¶ 3) (“I never rendered any opinion on any subject (and certainly not on covenants not to compete) to Delphi/ebix or to its counsel.”).
 

 In determining whether to allow ebix’s motion, the crux of this whole matter is whether Levin and Salinger’s current representation of the McCracken defendants is “substantially related” to their prior representation of ebix and its predecessors. The Massachusetts courts have not yet provided a definitive definition of “substantially related.” “Courts using the ‘substantially related test’ have taken differing approaches in its application, with some courts focusing on whether the issues involved are similar and other courts focusing on whether there is a factual overlap between the two matters.... Massachu
 
 *CXXXV
 
 setts has not yet determined which approach it will take.”
 
 Gerzof v. Cignal Global Communications, Inc.,
 
 No. 00-3337, 2001 WL 721622, *1 (Mass.Super. June 5, 2001)(citing Adoption of Erica, 426 Mass. at 58, 686 N.E.2d 967). See also Massachusetts Bar Association Committee on Professional Ethics Opinion 2003-4 (2003), at p. 2 (“MBA Op.”) (noting that courts have developed two definitions for the substantially related rule, but that the SJC had yet to determine which of the two tests to embrace).
 

 Thus, the Court does not have precise guidelines for what makes two matters “substantially related.” And, indeed, “[o]ne noted authority has commented that gallons of ink have been consumed by those who have tried to determine or explain the test for deciding whether a substantial relationship exists between representations.”
 
 Chrispens v. Coastal Refining & Marketing, Inc., 257
 
 Kan. 745, 751, 897 P.2d 104, 111 (1995)(citing ABA/BNA Lawyers’ Manual on Professional Conduct, 51:215). Instead of consuming more ink attempting to articulate the definitive test for what makes matters “substantially related”, this Court will de■termine whether either the facts or the issues are so similar between the current and prior representations that disqualification is warranted.
 
 [10]
 

 Here, the factual contexts of the two representations are not very similar. As discussed above, with regard to the non-compete, Levin and Salinger provided some legal research on non-competes in general to McCracken individually, not to ebix. Now, in their representation of the McCracken defendants, Levin and Salinger are arguing the position that McCracken did not breach his non-compete with ebix/Delphi-a non-compete that Levin and Salinger did not draft nor offer opinions on during their representation of ebix’s predecessors. Thus, the facts are not similar at all. Indeed, even if Levin and Salinger were doing research and offering opinions on the actual non-compete at issue in this case, as long as they were doing so for McCracken individually, there is no conflict because Levin and Salinger had nothing to do with drafting or opining on that non-compete for ebix.
 
 [11]
 

 Moreover, the legal issues also are not so similar that Levin and Salinger should be disqualified. In the present represen
 
 *CXXXVI
 
 tation, Levin and Salinger are claiming that McCracken did not violate the non-compete and perhaps that the non-compete is not enforceable; in the prior representation, Levin and Salinger provided research and an opinion on non-competition agreements in general and as stated above, they provided such to McCracken individually, not to ebix
 
 [12]
 
 . This simply is not a situation in which Levin and Salinger researched and drafted an agreement for ebix
 
 [13]
 
 and are now turning around and contesting the legality of that same agreement for the defendants. Put another way, any information communicated by ebix and its predecessors to Levin and Salinger would have no bearing on their representation of McCracken with regards to his non-compete because Levin and Salinger did not represent ebix or its predecessors with regards to that specific agreement. Thus, the non-compete issue does not provide a basis for the disqualification of Levin and Salinger.
 

 2. Copyright and Trademark Protection of Insight
 

 ebix is also suing the McCracken defendants for copyright violations, including unlawful copying. It asserts that Lev-in advised MCI to register all computer programs with the Copyright Office in 1986, and to “assign someone ... to work with [him] so that we may do what is necessary to register all valuable programs.” (# 68, pp. 9-10) Accordingly, MCI assigned one Colin Shea to work with Levin on copyrighting Insight’s predecessor, the “Rapp Program.”
 
 (Id.)
 
 Shea signed eight Certificates of Copyright Registration with the Copyright Office in July of 1987, on MCI’s behalf.
 
 (Id.)
 
 ebix also posits that Levin likely represented Delphi/McCracken in re-registering those trademarks in 1994.(/d) ebix maintains that Levin also represented MCI in the trademark registration of “INSIGHT.”
 

 The McCracken defendants respond that there is no nexus between advising MCI to register its copyrights and trademarks and actual infringement. (# 73, p. 22) The McCracken defendants are correct. Simply put, there is no substantial relationship (factually or legally) between registering copyrights and trademarks for MCI and then allegedly infringing those copyrights by copying the software and the manuals. Thus, this issue does not provide a basis for disqualifying Levin and Salinger.
 

 3. Advising on Confidentiality Provisions
 

 Another of ebix’s claims pertains to the alleged abuse of confidentiality agreements by its former employees who now work for MIS. ebix contends that Levin and Salinger actually reviewed the confidentiality agreements that form the basis of that claim. (# 68, p. 10) ebix also contends that the attorneys reviewed MCI’s Draft Employee Handbook and “provided advice with respect to MCI’s policies on the protection of confidential information by employees, conflicts of interest and outside employment.”
 
 (Id.)
 
 In support of this, ebix directs the Court to a letter sent
 
 *CXXXVII
 
 from Levin to Shea at MCI, dated December 18,1990, that states:
 

 Obviously, confidentiality is a critical component of a business which relies on trade secrets. Consequently, the confidentiality agreement that you ask employees to sign should be carefully drawn and comprehensive. I understood from the Handbook that employees are required to execute a confidentiality agreement. I would like to see the document that is being used, and if one is not being used, I strongly urge that one be utilized.
 

 (# 68, Ex. V)
 

 The letter also contains several proposed changes to the Handbook, including a suggestion that “you should include in the Handbook [ ] a prohibition prohibiting employees from working for a competitor or engaging in a business in competition with McCracken while they are employed by McCracken.”
 
 (Id.)
 
 Attached to the letter are Handbook provisions entitled “Conflicts Of Interest,” “Confidentiality,” and “Outside Employment” that are heavily edited. There is also an attachment entitled “Work for Hire: Copyright
 
 &
 
 Patent Assignment Ownership of Intangible Property,” which has one handwritten edit.
 

 The attorneys respond that they only reviewed the MCI handbook before the merger (as MCI dissolved in the merger), and that they did not draft the Confidentiality Agreement actually at issue in this suit (and never saw it until 2001, when ebix sent demand letters to the McCracken defendants before filing this suit). (# 73, pp. 22-23) The attorneys maintain in short that drafting confidentiality provisions for MCI has nothing to do with the agreements in this litigation. (# 73, pp. 22-23) Again, the Court agrees with Levin and Salinger. Since Levin and Salinger did not draft the confidentiality agreement at the center of this lawsuit, there is no conflict for them to now argue that the McCracken defendants did not breach such confidentiality agreement or even that such agreement is unenforceable. In other words, there is no substantial relationship between previously offering advice on an employee handbook and currently arguing over a specific confidentiality agreement and thus no reason for disqualifying Levin and Salinger.
 

 4. Claim re: Unfair Competition and Tortious Interference
 

 Next, ebix claims that the McCracken defendants have engaged in unfair competition and tortious interference in wooing away its customers. (See generally # 14, pp. 18-20) Levin and Salinger apparently represented Delphi/McCracken in writing a letter threatening to bring identical claims against a competitor. Specifically, in December of 1991, Levin wrote a letter to a competitor of Delphi/McCracken after the competitor sent letters to Delphi/McCracken customers requesting “the opportunity to show you how our system is superior to what you have now.” (# 68, p. 11) The constructive cease and desist letter states:
 

 Delphi/McCracken deems the marketing tactics evidenced by Mr. Paekner’s correspondence to be actionable, giving rise to various causes of action, including unfair competition under federal and state laws, interference with contractual and advantageous relations and unfair and deceptive trade practices.
 

 (# 68, Ex. R)
 

 The attorneys respond that this representation had nothing to do with the current action: “Not only does the letter written by Levin have nothing to do with the specific claims pled by Ebix (the alleged theft of Insight customers), [but] in writing the letter, Levin gained absolutely no confidences that could be used to
 
 *CXXXVIII
 
 Ebix’s detriment in this suit.” (# 73, p. 23) This purported conflict merits little discussion. The current representation on the tortious interference claim and the prior representation of Delphi/McCracken against entities which may have been tor-tiously interfering are hardly substantially related-indeed, they barely seem to be related at all, apart from the fact that both involve claims of possible tortious interference. Thus, again, there is not a basis for disqualifying Levin and Salinger.
 

 5. Drafting and Negotiating Insight Software Licenses and Maintenance and Support Agreements
 

 ebix claims the McCracken defendants infringed on the copyrights it holds in the Insight software (acquired by Delphi/McCracken in the 1991 merger), ebix states that Levin was “ ‘general counsel’ to ebix and its predecessor for well over ten years.” (# 68, p. 12) In that capacity, Levin allegedly “gained an intimate knowledge of the various software and licensing and support agreements entered into between ebix and its customers, many of which are identical to those now in force between ebix and its clients and... implicated in the present dispute.”
 
 (Id.)
 
 Prior to the merger, Levin and Salinger allegedly represented the plaintiff (in its earlier forms) in 40 matters regarding software licenses and related maintenance and support agreements.
 
 (Id.)
 
 Specifically, ebix maintains Levin and Salinger represented the plaintiff in negotiating such agreements with two Insight customers whose move to MCI forms the basis of ebix’s claims against the McCracken defendants (Insurance One and Daniels Insurance Agency, Inc.). (# 68, p. 12)
 

 After the merger, Levin and Salinger allegedly represented Delphi/McCracken on eight licensing matters between 1991 and 1995; only some of these, apparently, pertained to Insight.
 
 (Id.)
 
 This includes an addendum they prepared in 1991 to the Insight Purchase and License Agreement and Support Services Agreement (which was between Delphi/McCracken and Kaye Insurance Associates). (# 68, p. 12)
 

 In response, the attorneys state first that referring to Levin as “general counsel” is “knowingly false.” (# 73, p. 24) They state that “[wjhereas before the Stock Purchase, Levin had been counsel to and was a director of MCI, that role terminated with the merger.”
 
 (Id.)
 
 After the merger, Levin apparently represented Delphi/McCracken (which was at the time based in California) “with respect to a small number of isolated issues emanating from its Burlington, Massachusetts office.”
 
 (Id.)
 

 Second, and most important, the attorneys maintain that none of the agreements Levin reviewed or drafted are actually in play in this case, and ebix is not suing for breaches of licensing or maintenance agreements.
 
 (Id.)
 
 They attest that they had nothing to do with the contracts the McCracken defendants allegedly interfered with (i.e., the contracts with Insurance One and Daniels Insurance Agency)
 
 (Id.
 
 at p. 25) (“[T]hese contracts contain language that was anathema to the corporate philosophy of MCI, and Levin would not have advised their adoption by Ebix, even if he had been asked to review them, which he was not.”).
 

 Thus, again, this is not a situation in which the present and prior representations are substantially related. Notably, the claim in this case is that the McCracken defendants violated ebix’s copyright on Insight-there is no claim that the McCracken defendants breached licensing agreements. Due to the lack of a substantial relationship between the current and prior representations regarding the alleged copyright violation, there is no
 
 *CXXXIX
 
 ground for disqualifying Levin and Salinger.
 

 6. Drafting and Negotiating Licenses and Other Agreements Pertaining to Dismissed Antitrust Counterclaim
 

 ebix maintains that Levin and Salinger played a role in representing Delphi/McCracken in entering tying agreements that then formed the basis of the antitrust counterclaims they filed in this action (which they have since dismissed) (# 68, p. 13). While acknowledging the dismissal of those claims, ebix argues that Levin and Salinger are tainted by having pressed them for over nine months.
 
 (Id.)
 

 The antitrust counterclaims alleged illegal tying agreements with Flat Top Company and Accordia. In 1984 Levin represented MCI, apparently in connection with software licensing agreement amendments with Flat Top Company; in 1984, Levin was associated with the law firm of Levin & Berk.
 
 (Id.)
 
 In 1994, he represented MCI in connection with a potential breach of a licensing agreement with Accordia. (# 68, p. 13) ebix seems to be contending that these representations amount to “play[ing] a direct role in the review, drafting, negotiating and amending of software license and support agreements with those two entities.”
 
 (Id.)
 

 The attorneys respond that “Levin had nothing to do with drafting any of the. agreements that MIS later contended constituted illegal tying, and it is disingenuous and even insulting of Ebix to suggest so.” (# 73, p. 25) Moreover, they maintain that the dismissal mooted this issue. Levin and Salinger are correct-dismissal of the tying claims has mooted the issue and the Court need not address the issue further.
 

 7.
 
 Representations in Matters Involving Richard Roy
 

 Richard Roy is a former ebix employee who ebix alleges “has provided services to Defendants MIS and/or Frank McCracken.” (# 68, p. 14) Roy began working for ebix in 1986, and shortly thereafter Levin represented MCI in connection with allegations by Roy’s former employer, Redshaw, that Roy had breached his confidentiality and non-competition agreement with that employer, and that MCI had tortiously interfered with Red-shaw’s relationship with Roy.
 
 (Id.)
 
 Levin also represented MCI in 1987 in drafting Roy’s severance agreement, an agreement that contained “detailed provisions of confidentiality of [MCI’s] proprietary information and software, non-solicitation of both employees and customers, and non-competition.” (# 68, p. 14)(emphasis in original) Levin also represented MCI in 1988 in connection with Roy’s claims for unpaid commissions on the CALCO Insurance account, a client whose move to MIS is included in ebix’s tortious interference count.
 
 (Id.)
 

 In response, the attorneys contend that Levin’s review of the confidentiality agreements was on behalf of MCI (as everything took place before the merger), and had nothing to do with ebix’s confidentiality agreement. (# 73, p. 26) They maintain moreover that ebix has not shown how this representation would have given Levin access to confidential information that could be relevant in this suit.
 
 (Id.)
 

 There are two issues here: (1) the attorneys’ review of Roy’s confidentiality agreement with Redshaw and MCI’s alleged tortious interference thereof; and (2) the attorneys’ negotiation of Roy’s severance from MCI and their representation of MCI in connection with Roy’s claims for unpaid commissions on the CALCO account. Unfortunately for the plaintiff neither of
 
 *CXL
 
 these issues is substantially related to any of the issues in the instant lawsuit. It strains credulity to even assert that Levin and Salinger’s review of Roy’s confidentiality agreement with Redshaw, a party totally unrelated to the current case, and MCI’s purported interference with Roy’s contract with Redshaw is somehow related, even tangentially, to the allegations in this case that the McCracken defendants tortiously interfered with ebix’s contracts. Similarly, the fact that the attorneys negotiated with Roy over his severance agreement and unpaid commissions on the CAL-CO account has nothing to do with the attorneys’ current representation of the McCracken defendants, even though as part of this action, ebix has alleged that the McCracken defendants interfered with ebix’s contract with CALCO.
 
 [14]
 

 8. General Representation, Including Employee Matters
 

 Finally, ebix maintains that Levin and Salinger provided general representation to Delphi/McCracken in the 1990s. In support, ebix quotes letters to Delphi/McCracken’s auditors from 1992 through 1995 (the “auditor letters”), in which Levin stated his firm “represents the Company on a regular basis ...” (# 68, Ex. F)
 

 Notably, the complete sentence from that letter ebix quotes seems to undermine its assertion that Levin was serving in the role of general counsel to Delphi/McCracken during this period. The sentence, in full, reads:
 

 While the undersigned represents the Company on a regular basis, our engagement has been limited to specific matters as to which we have been consulted by the Company, and there may exist matters of a legal nature which could have a bearing
 
 on
 
 the Company’s financial condition with respect to which we have not been consulted.
 

 (# 68, Ex. F) (emphasis added).
 

 ebix also maintains that Levin was Clerk and a Director of MCI from December of 1982 until at least January 31, 1991. (# 68, p. 15)
 

 This “general representation” included representing MCI and Delphi/McCracken in a number of employee-related matters, according to ebix, including: (1) two discrimination-related claims brought before the Massachusetts Commission Against Discrimination (in 1986 and 1991); (2) claims by a former employee of wrongful termination and breach of the implied covenant of good faith and fair dealing (in 1988); and (3) a wage claim by a former employee (in March of 1991).(/d)
 

 The attorneys respond that ebix has not shown how these representations are relevant to the current dispute or would prejudice ebix. (# 73, p. 26) Not to belabor a point, but once again the attorneys are correct.
 

 IV. CONCLUSION
 

 I find that none of the matters pointed to by the plaintiff are substantially related to any of the issues in the current litigation. Some may be “related” to some degree, but none are “substantially related.” Therefore, there is no basis for the disqualification of Levin and Salinger. For the aforementioned reasons, an electronic order entered on March 31, 2004 denying Plaintiffs Motion to Disqualify the Law Firm of Cumsky & Levin LLP as Counsel "for the McCracken Defendants (# 67). The file is herewith RETURNED to the District Judge for further proceedings.
 

 [1]
 

 .The docket of this case is hopelessly confused. Plaintiff ebix.com, Inc.’s Motion to Disqualify the Law Firm of Cumsky and Levin as Counsel for the McCracken Defendants is clearly denoted # 67 on the face of the motion. However, on the Court’s computerized records, # 69 is listed as being the motion to disqualify. The Clerk's Office has apparently lost # 69; it cannot be located. Accordingly, the Court entered electronic orders on March 31, 2004 denying both motion # 67 and motion #69 (in the event it is a motion). In the within Opinion, the Court gives its reasons for denying the motion before the Court, i.e., Plaintiff ebix.com, Inc.'s Motion to Disqualify the Law Firm of Cumsky and Levin as Counsel for the McCracken Defendants (# 67).
 

 [2]
 

 . There is some confusion as to whether the correct name of this entity is McCracken Financial Software, Inc. or McCracken Financial Solutions, Inc. (See # 14, ¶ 8) The Court assumes that these two names refer to the same entity and that entity is referred to herein as MFS.
 

 [3]
 

 . In support of its motion, ebix filed a Memorandum of Law in Support of Its Motion to Disqualify the Law Firm of Cumsky & Levin LLP as Counsel for the McCracken Defendants with attached Affidavit of Steven D. Weatherhead, Esq. and exhibits (# 68).
 

 [4]
 

 . The parties have consented to have the undersigned issue a final ruling on the motion pursuant to 28 U.S.C. § 636(c) and the District Judge has referred the matter for that purpose. It is noted that § 636(c) permits the parties to consent to a magistrate judge conducting . .any or all proceedings.. .in a civil matter.”
 

 [5]
 

 . At the hearing on this motion, counsel for both sides agreed that there is no dispute that ebix and the McCracken defendants are ''adverse.” Thus, the issue of whether the sides are adverse need not be discussed in this Memorandum and Order. The deciding factor in the instant motion thus is whether the matters on which Levin and Salinger are representing the McCracken defendants are "substantially related” to the matters on which they represented ebix and its predecessors.
 

 [6]
 

 . At the hearing, counsel for ebix discussed in detail each claim in this lawsuit that he claimed was substantially related to matters on which Levin and Salinger represented ebix. Each matter is addressed separately in this Memorandum and Order, infra.
 

 [7]
 

 . Prior to the Adoption of Erica case, the SJC had not explicitly adopted the so-called "substantially related” test.
 

 [8]
 

 . While the Adoption of Erica court did not discuss the issue of prejudice, the Superior Court has stated that the consideration constitutes a separate ground for denying a disqualification motion. See
 
 National Med. Care,
 
 2002 WL 31068413, *8 (“This Court concludes that the unfair prejudice that disqualification would cause to [the current client] as a result of the delay, and the disruption and delay it would produce to the administration of justice are independent reasons to deny the motion.”). Because the Court concludes here that there is no substantial relationship between the attorneys’ prior and current representations, the prejudice issue need not be addressed.
 

 [9]
 

 . Counsel for ebix essentially conceded this point at the hearing on this motion.
 

 [10]
 

 . The Seventh Circuit applies a three-step variant of this approach: "Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.”
 
 Westinghouse Elec. Corp. v. Gulf Oil Corp.,
 
 588 F.2d 221, 225 (7th Cir.1978).
 

 Moreover, this approach seems to be consistent with what the Massachusetts Bar Association Committee on Professional Ethics counseled in its recent opinion regarding the "substantially related” rule. See MBA Op. at p. 2 (suggesting that lawyers, in determining if representations are substantially related, should determine both whether the issues are the same and whether the factual contexts are the same).
 

 [11]
 

 . The fact that Levin and Salinger (at the time with Looney & Grossman) may have billed the successor entity for their work does not sway the Court because as McCracken testified, billing the successor entity was merely a logistical matter: “even though Looney & Grossman may have sent its invoice to my former controller... at the successor corporation,.. .there were a series of adjustments post closing for a variety of items,... and I also paid for Looney & Gross-man's services.. .with either a post closing adjustment or the exchange or reimbursement checks when various closing and post closing details were worked out. ...”(# 75, ¶ 6)
 

 [12]
 

 . Indeed, in this particular circumstance, it is hard to separate the facts from the legal issues; in any event, Levin and Salinger’s prior representation regarding non-competes in general and Levin and Salinger’s present representation regarding McCracken’s non-compete specifically cannot be considered "substantially related.”
 

 [13]
 

 . Levin and Salinger have submitted sworn testimony to the Court that they neither drafted nor opined on the specific non-compete at issue in this case. The plaintiffs have not submitted any sworn testimony demonstrating that Levin and Salinger are not being truthful. Thus, the Court shall accept Levin and Salinger’s accounts of what transpired.
 

 [14]
 

 . The Court notes that Roy is not a named defendant in this case.